IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TANYA THOMPSON, as next of kin for N.R. )
) Case No. 3:22-cv-00460
v. )
)
KILOLO KIJAKAZI, Acting Commissioner )
Social Security Administration )

**To:** The Honorable Eli J. Richardson, United States District Judge

## REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 465(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying Childhood Supplemental Security Income ("SSI") for a minor child, N.R., under Title XVI of the Social Security Act.[1] This case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 33),[2] to which Defendant responded (Docket No. 37). Plaintiff filed a reply to Defendant's response. (Docket No. 38.) Defendant filed a sur-reply to Plaintiff's reply. (Docket No. 41.) This

---

[1] For purposes of clarity, the undersigned will refer to Plaintiff Tanya Thompson as "Plaintiff" and to the minor claimant as "N.R." or "Claimant." The Court notes that the caption of Plaintiff's complaint refers to the minor claimant as "R.N." though "N.R." appears to be correct. *See* Docket No. 1.

[2] Plaintiff erroneously titled her motion as "Reply to Defendant's Response in Opposition to Plaintiff's Request for Attorney's Fees Under the Equal Access to Justice Act, 28 U. S. C. 2412." (Docket No. 33.) Plaintiff also submitted a "Brief in Support of Motion for Judgment on the Administrative Record" in which she inexplicably repeated her arguments regarding the ALJ's alleged errors in two separate sections of her brief. (Docket No. 34 at 1–6, 12–18.) The arguments appear to be duplicated almost word-for-word, though this Court did not expend its limited resources comparing the arguments from the two sections side-by-side.

matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 4.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 33) be DENIED.

## I. INTRODUCTION

Plaintiff filed applications for disability benefits for N.R. on August 28, 2015, November 21, 2016, and August 30, 2017, all of which were denied. (*See* Transcript of the Administrative Record (Docket No. 26) at 53.)[3] On March 13, 2019, Plaintiff filed another application for SSI benefits in which she alleged that N.R. was disabled due to attention deficit disorder ("ADD"), attention deficit hyperactivity disorder ("ADHD"), and oppositional defiant disorder ("ODD") as of December 8, 2017.[4] (AR 294.) The application was denied initially on August 8, 2019 and upon reconsideration on November 8, 2019. (AR 10.) On June 10, 2021, Plaintiff appeared with counsel and testified at a hearing conducted by ALJ Scott C. Shimer. (AR 25–46.) On July 7, 2021, the ALJ denied the claim. (AR 7–9.) On May 17, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1–4.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[4] During the hearing on May 28, 2021, Plaintiff requested that the onset date be amended from December 8, 2017 to August 30, 2017. (AR 34.) Plaintiff argues that the ALJ accepted this request and amended the onset date, while Defendant argues that the ALJ did not accept this request and the original onset date remained in place. *Compare* Docket No. 34 at 2 *with* Docket No. 37 at 7.

2

## II. THE ALJ'S FINDINGS

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant was born on January 1, 2010. Therefore, he was a school-age child on March 13, 2019, the date [the] application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since March 13, 2019, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD); learning disorder; obesity (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since March 13, 2019, the date the application was filed (20 CFR 416.924(a)).

(AR 10–19.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Social Security Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the SSA is supported by substantial evidence; and (ii) whether the SSA made legal errors in the process of

reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Put another way, the ALJ's decision must be affirmed if the "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Court's review of the SSA's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

B.   **Determining Childhood Disability at the Administrative Level**

The Social Security Act provides that an individual under the age of 18 is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

4

In considering whether a claimant has demonstrated such a disability, the ALJ must apply a three-part test that asks: (1) whether the child is engaged in substantial gainful activity; (2) whether the child's impairments are "severe"; and (3) whether the child's impairments meet, medically equal, or functionally equal a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a).

Regarding the third part of this test, a child may be found disabled if he has "a severe impairment or combination of impairments that does not meet or medically equal any listing . . . [but] results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). To establish such functional equivalence, the impairment(s) "must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2). An "extreme" limitation is an impairment that "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3). A child's functioning is assessed by considering how the child functions in activities with respect to six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). Each of these domains is assessed based on the age of the child, which, in this case, involves a school-aged child, age six to 12. *Id.* § 416.926a(g)(2)(iv).

The ALJ in the instant matter found that N.R. had severe impairments of ADHD, learning disorder, and obesity, but found that these impairments did not meet or medically equal any of the listings. (AR 11.) The ALJ then assessed whether N.R. had an impairment or combination of impairments that would *functionally* equal any of the listings. (AR 12–18.) He found that N.R. had

5

a marked limitation in "attending and completing tasks" but less than marked limitations in the other five domains. (*Id.*) Because the ALJ found that N.R. did not have marked limitations in two domains or an extreme limitation in any domain, he concluded that N.R. was not disabled. (AR 18.)

## C. Plaintiff's Assertions of Error

Plaintiff presents two assertions of error: (1) that the ALJ failed to properly address the opinion evidence of record after reopening a prior file; and (2) that the ALJ failed to properly address the persuasiveness of the medical opinions and to address all of N.R.'s severe impairments. (Docket No. 34 at 1–6, 12–18.) Based on these alleged errors, Plaintiff requests that the SSA's decision be reversed and remanded for either a grant of benefits or additional consideration pursuant to sentence four of 42 U.S.C. § 405(g), which states:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

(*Id*. at 19.)

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertions of error below.

### 1. The ALJ's Reopening of Plaintiff's Prior Application.

In her first assertion of error, Plaintiff alleges that the ALJ erred with respect to the reopening of N.R.'s prior administrative decision, which was denied on December 7, 2017. (Docket No. 34 at 3–4, 14–15; AR 53.) With respect to the date of the notice of the initial determination, the determination or decision may be reopened within one year "for any reason"; within two years for "good cause"; or at any time if the decision was obtained by fraud. 20 C.F.R. § 416.1488. "Good cause" will be found if new and material evidence is furnished, a clerical error was made, or the evidence that was considered clearly shows on its face that an error was made. 20 C.F.R. § 1489.

A determination or decision by the SSA may be reopened or revised either on the SSA's own initiative or if a claimant makes a request. 20 C.F.R. § 416.1487. If a claimant seeks to reopen a decision, the SSA's Program Operations Manual Systems (POMS)[5] requires the request to be an "affirmative action in writing," which the SSA defines as a "written statement . . . which indicates that there is a basis for disagreement with the correctness of a determination or decision." SSA POMS GN 04001.050. A new application for benefits is not considered to be an "affirmative action in writing" unless that new application indicates that the prior determination is incorrect. *Id.* In addition, even if a request to reopen has not been made by the claimant, an ALJ may implicitly reopen a case by reviewing the entire record in a new proceeding and reaching a decision on the

---

[5] The POMS is "a policy and procedure manual that employees of the Department of Health & Human Services use in evaluating Social Security claims." *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). While the POMS "does not have the force and effect of law, it is nevertheless persuasive." *Id.*

7

merits. *See Martin v. Comm'r, Soc. Sec. Admin.*, 82 F. App'x 453, 455 (6th Cir. 2003) (citing *Crady v. Sec'y of Health & Hum. Services*, 835 F.2d 617 (6th Cir. 1987) ("It appears obvious that the ALJ reopened the prior application, as he may do even though there is no express statement that he has done so.")).

When a reopening has been requested, an ALJ must clearly explain whether the prior period was reopened. *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 358 (6th Cir. 2013). Lack of a clear explanation may require a remand for clarification in certain cases. *Id.* (citing *Bailey ex rel. Bailey v. Astrue*, No. 10–262–DLB, 2011 WL 4478943, at *5 (E.D. Ky. Sept. 26, 2011); *Haddix v. Astrue*, No. 10–30–ART, 2010 WL 4683766, at *4 (E.D. Ky. Nov. 12, 2010); *Gossens v. Sec. of Health & Human Servs.*, 859 F.2d 922, 1988 WL 104963, at *2 (6th Cir. 1988)). A clear explanation is necessary because it permits an efficient and meaningful review of the ALJ's decision. *Id.* A "muddled" explanation, on the other hand, forces a court to expend unnecessary time and resources "attempting to figure out with the ALJ did." *Id.* ("If an ALJ intends to reopen prior decisions, he or she should say so, say why, and cite the appropriate regulation that permits reopening. If an ALJ intends instead to adjudicate only the subsequent period in light of changed circumstances, he or she should make this approach clear and cite the appropriate cases and acquiescence rulings. Regardless of which path the ALJs take, they must clearly state their approach.")

Here, Plaintiff makes two alternative arguments: either (1) the ALJ did reopen N.R.'s prior file from August 2017, but then failed to properly consider the opinion evidence in that prior file; or (2) the ALJ did not clearly state whether he did or did not reopen N.R.'s file from August 2017. (Docket No. 34 at 3-4, 14.) Plaintiff argues that, either way, the ALJ committed error and remand

is appropriate.[6] (*Id.* at 15.) In response, Defendant argues that the ALJ did not reopen the August 2017 file because the ALJ "did not have the legal authority to do so." (Docket No. 37 at 6.)

As a preliminary matter, this Court finds that Plaintiff did not clearly request to reopen the August 2017 file. In the June 10, 2021 hearing, counsel for Plaintiff included the following in his opening statement:

> Your Honor, the other thing is I'd like to change the onset date by a few months. The onset date right now is at December 8, 2017. And, we are within the two year period for a Title XVI case from the time of the previous decision, initial decision. And, I'd like to just change the onset date to August 30, 2017. *As the opening of that we have new and material evidence.* . . . Furthermore, Your Honor, the IEP is going back -- there were psychological evaluations done on him. And, *on back to 2017 hence the reopening request*, there's at 3F there is a school psychologist report where teachers were interviewed.

(AR 34–35 (emphasis added).) This oral request to reopen was vague and confusing at best, and nonexistent at worse. Further, Plaintiff has not presented any evidence that she made a request to reopen in writing. *See* SSA POMS GN 04001.050. Although policies within the POMS do not have the "force and effect of law," *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989), this Court finds that Plaintiff's failure to make a request to reopen in writing, in combination with the unclear oral request to reopen, is further evidence that the ALJ did not improperly consider, act upon, or fail to act upon a request to reopen, as detailed below.

The Court must determine whether, how, and when the prior file at issue could have been reopened. The August 2017 file was filed on August 20, 2017 and the initial determination to deny

---

[6] Plaintiff does not argue that the ALJ denied her request to reopen the August 2017 file. However, if she had made such an argument, this Court would not have jurisdiction to review the ALJ's denial because Plaintiff did not allege that the denial violated one of her constitutional rights. *Swartz v. Barnhart*, 188 Fed. App'x 361, 370 (6th Cir. 2006) ("Generally, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits.") (citing *Califano v. Sanders*, 430 U.S. 99, 107–109 (1977)); *Adams v. Colvin*, No. 1:12-CV-2338, 2013 WL 7020485, at *3 (N.D. Ohio Nov. 5, 2013) (citing *Califano*, 430 U.S. at 107–09)).

9

was issued on December 7, 2017. (AR 53.) Accordingly, the August 2017 file could have been reopened before December 7, 2018 "for any reason"; before December 7, 2019 for "good cause"; or at any time if the decision was obtained by fraud. 20 C.F.R. § 416.1488. Here, Plaintiff alleges that she requested a reopening during the hearing on June 10, 2021 based on the submission of an April 3, 2017 psychological assessment report from Karen VanGalder, Ed.S., which she asserts is "new and material evidence."[7] (Docket No. 34 at 2–3, 12–13.) Plaintiff does not point to any other times when she made a request to reopen.

Accordingly, because Plaintiff made her request to reopen the August 2017 file more than two years after the SSA's initial determination to deny the disability application, there was no basis to reopen the file for "good cause." 20 C.F.R. § 416.1488(b). The file could have only been reopened if the denial was obtained by fraud. 20 C.F.R. § 416.1488(c). However, Plaintiff has not alleged or presented any evidence to show that the denial of the August 2017 file had anything to do with fraud. She only argues that "good cause" existed because of the "new and material evidence" that she presented – the report from Ms. VanGalder. However, any potential "good cause" is irrelevant because the deadline to make such an argument expired on December 7, 2019. Accordingly, Plaintiff has presented no viable legal basis upon which the ALJ could have reopened the August 2017 file in response to her request.

---

[7] The parties dispute whether Ms. VanGalder's report constitutes "new and material evidence" such that there was "good cause" for the ALJ to reopen the August 2017 file pursuant to 20 C.F.R. §§ 416.1488–89. *Compare* Docket No. 34 at 3 n.2 *with* Docket No. 37 at 7. Because the Court finds that the ALJ was powerless to reopen the August 2017 file for "good cause," the Court does not reach a determination of whether Ms. VanGalder's report was "new and material evidence" such that "good cause" existed. For these same reasons, the Court will not address the parties' arguments regarding whether the ALJ adequately developed the record with respect to N.R.'s prior claims folders. *See* Docket No. 38 at 1–4; Docket No. 41 at 1–2.

Further, because more than two years had passed since the denial of the August 2017 file, the ALJ could not have implicitly reopened the file for "good cause." *Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004) ("Because more than four years [under 20 C.F.R. § 494.988, the Old-Age, Survivors and Disability Insurance equivalent to 20 C.F.R. § 416.1488] had passed since the denial of the original application, the Commissioner could not have constructively reopened Glazer's case."); *Roy v. Comm'r of Soc. Sec.*, 2017 WL 1101862, at *11 ("The ability to reopen—explicitly or implicitly—must meet certain regulatory requirements. Chief among these is the two year (SSI) and four year (DIB) time limits for good cause reopenings. Consequently, an ALJ is powerless to reopen a claim outside these periods.") (citations omitted). For these reasons, the Court rejects Plaintiff's first assertion of error.

### 2. The ALJ's Review of the Record.

Next, Plaintiff asserts that the ALJ's finding that N.R. "does not have an impairment or combination of impairments that functionally equal the severity one of the listings" was not supported by substantial evidence. (Docket No. 34 at 4–6, 15–18.) In his decision, the ALJ found that N.R.'s medically determinable impairments – ADHD, learning disorder, and obesity – could reasonably be expected to cause N.R.'s alleged symptoms. (AR 11–12.) However, when analyzing the six domains of functioning, the ALJ determined that N.R.'s allegations concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 13.) The ALJ also determined that N.R. had a "marked" limitation in attending and completing tasks, but a "less than marked" limitation in the other five domains of functioning. (AR 12–18.)

### i. The ALJ's Evaluation of the VanGalder and Dinwiddie Reports.

To support her second assertion of error, Plaintiff argues that the ALJ failed to (1) properly consider and discuss the April 3, 2017 psychological assessment report from Karen VanGalder, Ed.S. when making the functional equivalence analysis (AR 468–82) and (2) adequately address what Plaintiff believes is a "massive contradiction" between a May 27, 2020 functional equivalence report completed by Katharine Dinwiddie, D.O. (AR 757–61) and the ALJ's analysis of at least one of the six domains delineated in 20 C.F.R. § 416.926a. (Docket No. 34 at 4–6, 15–17.)

Ms. VanGalder, a licensed school psychologist with the Tennessee Department of Education, undertook an assessment of N.R. in March and April 2017, when he was in the first grade, to "provide current functioning levels to assist in determining eligibility for special education services." (AR 468, 633.) Ms. VanGalder issued a "Psychological Assessment Report" on April 13, 2017, which was based on direct and indirect observations, reviews of medical statements, and assessments to determine N.R.'s intellectual functioning, academic functioning, and adaptive, social, and emotional functioning. (AR 468–82, 633–47.) In her report, Ms. VanGalder concluded that N.R. was functioning "significantly below his peers in the area of Basic Reading Skills" and that his ADHD was "significantly impacting his ability to access the general education curriculum." (AR 479–80.) Plaintiff concedes that the ALJ referenced this report in his decision but believes the ALJ failed to appropriately analyze or discuss the report, which Plaintiff believes demonstrates that N.R. "had very significant limitation[s] compared with his peers." (Docket No. 34 at 4–5, 15–16.) In response, Defendant contends that Ms. VanGalder's report was "part of the prior application that was denied in December 2017" so the ALJ was not required to evaluate it for persuasiveness. (Docket No. 37 at 15.)

Dr. Dinwiddie is a Doctor of Osteopathic Medicine and child and adolescent psychologist who works at Mental Health Cooperative. It is not clear when Dr. Dinwiddie first saw N.R., but as of May 27, 2020, she was seeing him every 3 to 4 months for approximately 15 minutes, during which time she provided medication management services, including the continuation of psychopharmacological interventions for ADHD. (AR 757.) On May 27, 2020, Dr. Dinwiddie completed a functional equivalence report for N.R. This report included a "domain evaluation" corresponding to the six domains of functioning, in which she checked off boxes indicating that N.R. had "less than marked" limitations in both "acquiring and using information" and "attending and completing tasks." (AR 758.) She indicated that N.R. had "no limitation" in the four other domains of functioning. (AR 758–59.) She provided "further explanation" for her domain evaluation:

> [N.R.] has been diagnosed with ADHD and primary insomnia. In the past he has done well in school, but in this last year has struggled with math and some lack of understanding in his classes. He has gained a significant amount of weight in the last couple years and I have significant concerns not only for general health but the impact of weight gain on sleep patterns. I have concerns for sleep apnea or other sleep issues, and have been encouraging an evaluation by a sleep medicine specialist as impaired sleep would markedly affect comprehension and memory.
>
> With an ADHD diagnosis, some lack of attention to detail and careless mistakes are likely to happen, but I do not believe it is such to prevent [N.R.] from being an independent, self-supporting individual when he is grown.

(AR 761.) In a cover letter, she stated:

> I . . . have not observed nor heard of significant functional impairment in [N.R.] I wonder if the school psychologist may be better able to complete a form that would be more robust as there may be more deficits in a[] school setting than I am aware of.

(AR 757.) Plaintiff argues that the ALJ failed to adequately discuss and apply Dr. Dinwiddie's concerns regarding N.R.'s sleep patterns and the impact they could have on his comprehension and memory functioning. (Docket No. 34 at 5, 16.) Plaintiff concedes that the ALJ considered Dr.

13

Dinwiddie's opinion when analyzing N.R.'s ability to attend and complete tasks, which the ALJ found to be "marked," but believes the ALJ should have explicitly considered and referenced the report when analyzing N.R.'s other five domains of functioning. (*Id.*) (AR 17.) In response, Defendant argues that the ALJ properly considered Dr. Dinwiddie's report and to find otherwise would be to "reinterpret the evidence in direct contradiction" to the report. (Docket No. 37 at 11–13.)

The Court finds that substantial evidence supports the ALJ's evaluation of the reports from both Ms. VanGalder and Dr. Dinwiddie. When reviewing evidence in a case, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Rather, the ALJ must "articulate with specificity reasons for the findings and conclusions that he or she makes." *Reagan v. Colvin*, 47 F. Supp. 3d 648, 653 (E.D. Tenn. 2014) (quoting *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999.) Nevertheless, an ALJ "may not ignore an entire line of evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12–cv–00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004) (citation omitted)).

Although the ALJ did not provide a lengthy analysis of Ms. VanGalder's report, he did reference it in support of his finding that N.R. had been diagnosed with ADHD, which impacted his "ability to sustain concentration" and caused "aggression, excitability, fidgeting, hyperactivity, impulsivity, forgetfulness, and a short attention span, and insomnia." (AR 13.) The ALJ also cited to the report's indication that N.R.'s conservative psychotropic medication treatment was

successful (AR 14) and that N.R. "is often impatient and frequently interrupts others when they are talking" when analyzing N.R.'s ability to interact and relate with others. (AR 18).

With respect to Dr. Dinwiddie's report, the ALJ found her opinion that N.R.'s "sleep patterns could markedly affect comprehension and memory functioning" to be "persuasive." (AR 16.) He broadly analyzed her opinion when providing a summary of the evidence in N.R.'s record, and explicitly considered it when determining that N.R. had "marked" limitations in the domain of attending and completing tasks. (AR 16–17.) Although he did not explicitly reference Dr. Dinwiddie's report, the ALJ did articulate with specificity why he found that N.R. had "less than marked" limitations in the other five domains of functioning. For example, with respect to the domain of acquiring and using information, to support his finding that N.R. experienced difficulties in some academic subjects but performed well in others, the ALJ relied on N.R.'s individualized education plan; a consultative examination report from Leah Hawkins, M.A., in which she found that N.R.'s ability to understand remember fell within normal limits; a report from N.R.'s teacher, Latinya Johnson, which stated that N.R. earned good grades in all academic subjects except for Social Studies; and medical records from Mental Health Cooperative, which showed adjustments to prescribed medications and an update from Plaintiff that N.R. was improving in all academic subjects. (AR 16–17.) The ALJ similarly referenced other evidence from the record to support his findings as to the other domains.

Given the above, the Court sees no indication that the ALJ failed to properly consider and discuss either Ms. VanGalder's report or Dr. Dinwiddie's report. Rather, the ALJ's references to both reports suggest that he evenly considered the evidence of record, which precludes a finding of reversible error. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("[W]e consider the

ALJ's decision determinative if there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion.")

   ii.   The ALJ's Evaluation of N.R.'s Insomnia.

To further support her second assertion of error, Plaintiff also argues that the ALJ erred by not finding insomnia to be a severe impairment and by not considering N.R.'s "insomnia or sleep condition" when analyzing five of the six domains delineated in 20 C.F.R. § 416.926a. (Docket No. 34 at 6, 17–18.) To find that a claimant's impairment is not severe, the SSA must conclude that the condition in question "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). If an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576–77 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-3p, 1996 WL 374181, at *1 (1996)). The Sixth Circuit has described this step of the evaluation as a "*de minimis* hurdle," *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), which is used to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985).[8]

Nevertheless, the omission of a "severe" finding at step two is subject to harmless error review if other impairments were deemed to be severe. *See Nejat*, 359 F. App'x at 577; *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was

---

[8] The Court acknowledges that the three-part test for determining Childhood SSI pursuant to 20 C.F.R. § 416.924(a) is not the same as the five-step evaluation in 20 C.F.R. § 416.920(a) that applies to adult applications. However, the step two severity assessment appears to involve the same evaluation under both regulations. *See, e.g.*, *Ramirez v. Astrue*, No. 08 Civ. 7609 (SAS), 2009 WL 2356259, at *5 (S.D.N.Y. July 29, 2009) (acknowledging application of the *de minimis* screening test in Childhood SSI cases).

harmless error where other impairments were deemed severe). However, the ALJ is still obligated to base his ultimate disability finding upon the cumulative effect of all the claimant's impairments, *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007), and courts in the Sixth Circuit have remanded when the administrative opinion suggests that the ALJ has failed to do so. *See Albadiry v. Colvin*, No. 3:13-cv-0840, 2014 WL 4533349, at *17 (M.D. Tenn. Sept. 11, 2014), *report and recommendation adopted sub nom. Albadiry v. Soc. Sec. Admin.*, 2014 WL 4960949 (M.D. Tenn. Sept. 30, 2014) (citing cases).

The Court finds that the ALJ erred by failing to find N.R.'s insomnia to be a severe impairment. The evidence in the record shows that N.R.'s insomnia easily overcomes the "*de minimis* hurdle" set forth by step two because it indicates that his insomnia does, indeed, cause more than minimal functional limitations. *See Higgs*, 880 F.2d at 862. Nevertheless, the ALJ found that N.R.'s other impairments of ADHD, learning disorder, and obesity were severe. (AR 11.) The ALJ then considered these severe impairments, as well as N.R.'s non-severe impairments like insomnia, at the next step when he analyzed whether N.R.'s impairments met, medically equaled, or functionally equaled a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Furthermore, the ALJ evenly considered the evidence of record when making his ultimate finding of disability – he reviewed and considered N.R.'s school records, consultative examination reports from two different assessors, a teacher questionnaire, medical records from the Mental Health Cooperative, medical records from Dr. Churku Reddy, a function report completed by Plaintiff, Dr. Dinwiddie's report, Ms. VanGalder's report, and the opinions of agency consultants, among other records. (AR 13–18.) In sum, he did not ignore relevant, contrary evidence to reach his opinion, but rather referenced and discussed the medical and other evidence in the record. *See Craig v. Colvin*, No. 3:12-cv-0333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014).

Therefore, the fact that N.R.'s insomnia was not deemed to be severe at step two is harmless error and legally irrelevant. *See Nejat*, 359 F. App'x at 577; *Maziarz*, 837 F.2d at 244.[9]

Additionally, the Court finds that there was objective evidence in the record to support the ALJ's consideration of insomnia when analyzing the six domains of functioning. Plaintiff points to progress notes from four of N.R.'s visits with Mental Health Cooperative from January 2018 to June 2019 to demonstrate that N.R. has an insomnia "disorder" rather than simply a habit of going to bed late. (Docket No. 34 at 8 (citing AR 503, 513, 525, 555).) While such evidence could weigh in favor of a finding that N.R.'s insomnia significantly limits his ability to function, it does not demonstrate that the ALJ's determination was not supported by substantial evidence. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) ("Merely marshalling evidence to suggest that he is disabled, however, is insufficient; to prevail on appeal, [Claimant] must

---

[9] Plaintiff argues that this matter is analogous to *Teasley v. Saul*, No. 3:19-cv-1106 (M.D. Tenn.). Plaintiff asserts that *Teasley* "stood for the premise of not applying a severe impairment through the whole functional equivalence analysis violates substantial evidence." (Docket No. 34 at 6, 17.) The Court disagrees.

In *Teasley*, the Court found that the ALJ erred by failing to find at step two that the claimant's expressive and receptive language impairment was "severe." (Docket No. 34-1 at 11.) However, because the ALJ failed to evenly consider the evidence of record, the Court did not find that the ALJ's failure at step two was harmless. (*Id.* at 13.) In particular, the ALJ in *Teasley* disregarded certain relevant evidence regarding the claimant's speech and language and had an overall deficient rationale when concluding that the claimant had a "less than marked limitation" in the domain of attending and completing tasks. (*Id.* at 13–17.) Accordingly, the Court found that "the ALJ's findings with respect to the severity of the claimant's overall functioning were not supported by substantial evidence." (*Id.* at 11.)

Although the Court makes a similar finding at step two here – that the ALJ erred by failing to find N.R.'s insomnia to be a "severe" impairment – the Court finds that this error was harmless. As detailed above, the ALJ in this matter evenly considered the evidence of record when analyzing N.R.'s domains of functioning, unlike the ALJ in *Teasley*. Accordingly, the Court does not find that the holding in *Teasley* is applicable here.

demonstrate that the ALJ's determination that he was not disabled is not supported by substantial evidence.").

Furthermore, the ALJ thoroughly discussed N.R.'s sleep habits and challenges when evaluating the intensity, persistence, and limiting effects of N.R.'s symptoms, all of which he considered, at least implicitly, in his analysis of the domains of functioning. (AR 13–16.) Specifically, the ALJ noted that N.R.'s diagnoses of ADHD and learning disorder caused insomnia, but that he had experienced stable sleep patterns, including sleeping approximately six hours per night. (AR 13–14.) He also remarked that N.R. had no established bedtime and would stay up late into the night watching television or playing video games, but that N.R.'s ability to concentrate and focus improved when N.R. had "appropriate rest." (AR 15–16.) Accordingly, the ALJ considered the extent to which N.R.'s sleep issues resulted from his medically determinable impairments (i.e., ADHD, learning disorder, and obesity) and whether those sleep issues had a marked impact on the different domains of functioning. The ALJ's finding that N.R.'s insomnia was not a severe impairment for purposes of determining disability is thus supported by substantial evidence, and the Court may not reverse it. *See Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 391 (6th Cir. 2005) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). For these reasons, the Court rejects Plaintiff's second assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 33) be DENIED and the Social Security Administration's decision be AFFIRMED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with

particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge